**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BROTHERHOOD OF TEAMSTERS AND AUTO TRUCK DRIVERS LOCAL NO. 70 OF ALAMEDA COUNTY, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent.**

No. 71–1155.

United States Court of Appeals, Ninth Circuit.

May 4, 1972.

---

William Wachter (argued), Herbert Fishgold, Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Eugene G. Goslee, Acting Gen. Counsel, Washington, D. C., Roy O. Hoffman, San Francisco, Cal., for petitioner.

Edward M. Kovach (argued), Duane Beeson, of Brundage, Neyhart, Grodin & Beeson, Robert M. Lieber, of Littler, Mendelson & Fastiff, San Francisco, Cal., for respondent.

Before ELY and HUFSTEDLER, Circuit Judges, and JAMESON,* District Judge.

ELY, Circuit Judge:

The sole issue in this enforcement proceeding concerns the interpretation of sections of the National Labor Relations Act declaring it an unfair labor practice for a labor organization either to restrain or coerce an employer in the selection of his bargaining representative, section 8(b) (1) (B), 29 U.S.C. § 158(b) (1) (B),[1] or to refuse to bargain collectively with an employer. Section 8(b) (3), 29 U.S.C. § 158(b) (3).[2] The Board, in its Decision and Order reported at 183 NLRB No. 137, concluded that the Union had violated these statutory provisions when it refused to negotiate with certain employers represented by

---

* Honorable William J. Jameson, Senior United States District Judge, Billings, Montana, sitting by designation.

1. Section 8(b) (1) (B) provides
   "(b) It shall be an unfair labor practice for a labor organization or its agents—
   (1) to restrain or coerce . . . (B) an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances . . . ."

2. Section 8(b) (3) provides
   "(b) It shall be an unfair labor practice for a labor organization or its agents—
   *   *   *   *   *   *
   (3) to refuse to bargain collectively with an employer, provided it is the representative of his employees subject to the provisions of section 159(a) . . . ."

one Royster, the immediate past president of the Union.

After Royster was defeated in his attempt to gain reelection as Union president, he sought employment as a labor relations consultant for management. On behalf of one of his first clients, Wisinger Trucking Service, Inc., Royster dealt amicably with the Union for two months, during which period he investigated and instigated the resolution of several disputes and grievances against Wisinger. While subsequently attempting to resolve another grievance against Wisinger, however, Royster was told that the Union had decided, pursuant to orders from the new president and Executive Board of the Union, no longer to deal with him as a representative. A few days later, Royster attended a contract negotiations meeting as the representative for Kockos Brothers, Inc., another client, whereupon the Union implemented the prior warning by first refusing to deal while Royster remained in the room and then terminating the meeting when he declined to leave. On the following day, the Union formally advised employers represented by Royster that it would refuse to bargain with them so long as Royster was their representative. The Union's only expressed reason was that Royster, as a former president, could not deal with the Union "in an adversary capacity."

■ A literal interpretation of the statutory language would seem to indicate that a Union would never be justified in refusing to bargain with an employer, regardless of the representative's former ties with the Union. As recognized by our Brothers of the Second Circuit, in what is perhaps the leading case with respect to the employer's correlative duty to bargain with the Union, these statutory rules are not absolute.

"There have been exceptions to the general rule that either side can choose its bargaining representatives freely, but they have been rare and confined to situations so infected with ill-will, usually personal, or conflict of interest as to make good-faith bargaining impractical."

General Electric Co. v. N. L. R. B., 412 F.2d 512, 517 (2d Cir. 1969).

The Union's argument in our case can be readily dismissed. It was conceded upon oral argument that there were no facts in the record to support a charge that Royster had misused confidential information or that his selection as the bargaining representative was prompted by an "ulterior motive" on the part of the employers to gain an unfair advantage over the Union. See General Electric Co. v. N. L. R. B., supra at 518. Hence, the Union's position is reduced to its urging that because of the nature of the prior relationship between an executive officer and the Union, there arises a presumption against the propriety of a former official's becoming a bargaining representative of an employer negotiating with that Union.

The lack of merit of this argument is indicated by the wording and purpose of the statutes the Union has been charged with violating. The statutory language obviously imposes duties on the Union to bargain with employers and to refrain from coercing them in their choice of representatives. In order to avail itself of an exception to these statutory duties, the Union must prove that it is entitled to the application of the exception. See General Electric Co. v. N. L. R. B., supra at 517.

■■ Only in truly exceptional circumstances should a Union be permitted to refuse to bargain with an employer represented by a former Union official. In order to meet bizarre instances of abuse in the collective bargaining process, see N. L. R. B. v. International Ladies' Garment Workers' Union (Slate Belt), 274 F.2d 376, 379 (3d Cir. 1960) (employer, by hiring former union official as bargaining representative, claimed it had "put one over on the union" and placed "the union on the spot"), a flexible standard such as "good faith" has been employed. See General Electric Co. v. N. L. R. B., supra at

516–517. As a legal test, however, the "good faith" standard lacks precision. We think it better that the test be formulated in terms which focus directly on the danger posed by the selection of a former Union official as an employer's bargaining representative—the violation of the former relationship of trust through the misuse of confidential information. Thus we hold that, in cases of this nature, the burden is upon the Union to demonstrate that the representative in the particular dispute has gained an unethical or overreaching advantage by the misuse of specific confidential information acquired by reason of his former tenure as a Union official.[3]

Since the Union in this case did not meet that burden, the Board's petition for the enforcement of its Order is

Granted.

3. The Union apparently had no by-law, nor any contract between it and Royster, which might possibly have precluded Royster from accepting employment that would force him to deal with the Union in an adversary capacity.